**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

| | | |
|---|---|---|
| BRENDA KENNEDY, | * | |
| individually and on behalf of | * | |
| others similarly situated | * | |
| | * | |
| Plaintiff | * | |
| | * | NO: 2:11CV00131 SWW |
| V. | * | |
| | * | |
| UNITED AMERICAN | * | |
| INSURANCE COMPANY | * | |
| | * | |
| Defendant | | |

## ORDER

Plaintiff Brenda Kennedy ("Kennedy") commenced this putative class action in state court against United American Insurance Company ("United"), claiming that United failed to pay benefits due under an insurance policy. United removed the case to federal court pursuant to 28 U.S.C. § 1441(a), asserting jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d). Now before the Court is (1) Kennedy's motion for class certification (docket entries #49, #50), United's response in opposition (docket entries #55, #56), and Kennedy's reply (docket entry #58) and (2) Kennedy's motion to amend (docket entry #48) and United's response in opposition (docket entry #57). After careful consideration, and for reasons that follow, Kennedy's motion for class

certification and motion for leave to file a third amended complaint are denied.

## I.

United issued Kennedy an insurance policy, on United's form GSP2, that provides limited benefits for hospital expenses. The GSP2 Policy provides under Part 1 that United will pay a hospital expense benefit at a rate of 80% of the expenses, in excess of a deductible amount, incurred for hospital room charges and services and supplies furnished by a hospital during a hospital stay. *See* ECF No. 49-2 (GSP2 Policy Part 1). The GSP2 hospital expense benefit is limited to the lesser of two amounts, specified as (A) and (B), where (A) is a primary daily benefit times the number of hospital days, but no more than ten hospital days, plus a secondary daily benefit times the number of hospital days, but no more than thirty hospital days; and (B) is the maximum hospital expense benefit. *Id*. The GSP2 Policy defines the term "hospital days" as the "total number of days of confinement for all Hospital Stays for the same injury or Sickness." ECF No 49-2 (GSP2 Policy at 2, Definitions). The GSP2 Policy does not define the terms "confinement" or "days."

Kennedy was hospitalized at NEA Baptist Memorial Hospital ("NEA") from March 31, 2009 to April 2, 2009. Prior to entering the hospital, Kennedy signed a standard admission agreement that included an assignment of insurance benefits

provision. Pursuant to the assignment, Kennedy transferred and assigned to NEA all of her rights to benefits payable to her under all applicable insurance policies, and she authorized NEA's direct receipt of benefit payments.

In April 2009, NEA sent United a standard billing form that listed expenses incurred by Kennedy during her hospital stay. That form, commonly referred to as a "UB04," included charges for two days room and board. *See* ECF No. 55-6. United calculated the benefits due under Kennedy's GSP2 Policy according to Part 1(A), based on a two-day hospital stay, and United remitted that amount to NEA, pursuant to Kennedy's assignment of benefits. *See* ECF No. 55-3 (Mitchell Dep. at 100). Kennedy canceled her GSP2 Policy on July 14, 2009, and subsequently received a premium refund. Kennedy still owes NEA approximately $23,000 for charges incurred during her 2009 hospital stay.

Kennedy brings this putative class action against United, charging that United breached the terms of her GSP2 Policy by failing to pay benefits based on a three-day hospital stay. Kennedy alleges that United utilizes a "uniform adjusting procedure," whereby it determines benefits due by excluding the day of discharge from total "hospital days." It is Kennedy's contention that the day of discharge qualifies as one of the "total number of days of confinement for a Hospital Stay" under the GSP2 Policy.

Kennedy seeks to represent a nationwide class of individuals and entities that received benefits under a GSP2 Policy, Part 1(A). Kennedy describes the proposed class as follows:

> **Nationwide Restitution/Monetary Relief Class**: All persons and businesses domiciled in the United States who, between May 31, 2008 and the present, are or have been an insured, covered person or beneficiary and/or have been assigned rights and/or benefits in whole or in part under a GSP2 Limited Benefit Hospital and Surgical Expense Policy issued by United American Insurance Company, and were paid benefits for a hospital stay under the Hospital Expense Benefit provision of that GSP2 policy. Excluded from the Class are (1) all members of the judiciary of the United States District Court, Eastern District of Arkansas and their immediate family members; (2) all GSP2 insureds, covered persons, beneficiaries and their assignees whose claims for Hospital Expense Benefits included a hospital stay in which the admission and discharge dates were on the same date; and (3) all GSP2 insureds, covered persons, beneficiaries and their assignees whose claims for Hospital Expense Benefits exceeded 40 or more calendar days of confinement.

Docket entry #50, at 6.

Alternatively, Kennedy proposes that if the Court determines that a nationwide class is untenable, the Court should "consider either multi-state subclasses, or a class comprised of class members with laws aligned with Arkansas, or an Arkansas-only class." ECF #50, at 30.

## II.

A party seeking class certification must demonstrate that each requisite under Federal Rule of Civil Procedure 23(a) is met: (1) that the putative class is so

4

numerous that joinder of all members is impracticable; (2) that common questions of law and fact exist among potential class members; (3) that claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

A party seeking to maintain a class action must affirmatively demonstrate her compliance with Rule 23. "The Rule 'does not set forth a mere pleading standard.' Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, No. 11-864, 2013 WL 1222646, *4 (U.S. March 27, 2013)(quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545 (1979)(first quotation) and *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ––––, ––––, 131 S.Ct. 2541, 2551–2552 (2011)(second quotation)). A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 . . . have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372 (1982).

United maintains that Kennedy is unable to affirmatively demonstrate that

the requisites for class certification are met, and it gives special attention to the following arguments: (1) the proposed class includes individuals and businesses that lack standing and (2) the proposed class is overbroad and ill-defined.  The Court finds that United's central arguments pertain to the predominance requirement under Rule 23(b)(3) and will, therefore, address that criterion first.

### Rule 23(b)(3) - Predominance Requirement

A party seeking class certification shoulders the burden to satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  Here, Kennedy contends that the record supports certification under Rule 23(b)(3), which requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members . . . . " Fed. Rule Civ. P. 23(b)(3).  The predominance standard requires that common questions predominate over individual questions, and it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In deciding whether common issues predominate over individual issues, a court must conduct a rigorous analysis, including an examination of what the parties would be required to prove at trial. *See In re Zurn Pex Plumbing Products Liability Litigation,* 644 F.3d 604, 611 (8th Cir. 2011)(citing *Avritt v. Reliastar Life*

*Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). If the evidence required to resolve a particular question would vary among individual class members, it is an individual question. *See id*. But if the same evidence would suffice for each member, then it becomes a common question. *See id.*

In its answer to the amended complaint, United affirmatively asserts that Kennedy and the putative class members "lack standing" to the extent that they have assigned their rights to benefits to a medical service provider or other third party. ECF No. 47 (Second Affirmative Defense). Previously in this case, United moved for dismissal under Rule 17(a), asserting that Kennedy was not the real party in interest with respect to her individual claim for breach of contact. Based on the specific language of the assignment agreement between Kennedy and NEA and the particular circumstances the assignment transaction, the Court found that NEA, not Kennedy, qualified as the real party in interest. However, the Court did not dismiss Kennedy's claim. In accordance with Fed. R. Civ. P. 17(a)(3), the Court allowed a reasonable period of time for ratification of the action by, or joinder or substitution of, NEA. Subsequently, Kennedy obtained NEA's ratification and release of assignment, which qualified her as the real party in

interest.   United has presented undisputed evidence that in exchange for NEA's ratification and release, Kennedy has agreed to pay NEA one-half of all amounts that she recovers in this lawsuit.  A letter dated July 20, 2012, from Plaintiff's counsel to Baptist Memorial Health Care Corporation, reads as follows:

> This letter will confirm that Brenda Kennedy will pay to NEA Baptist one-half (½) of all amounts recovered by her, individually, in the above referenced matter [*Kennedy v. United American Insurance Company*, No. 2:11CV00131 (E.D. Ark.)].  Any amount paid to NEA Baptist though  recover[y] in the litigation shall be applied to Ms. Kennedy's unpaid balance.

*See* ECF No. 47, Ex. B.

United contends that the proposed class, as defined by Kennedy, includes insureds who have assigned their right to GSP2 benefits to healthcare providers.[1] Describing the matter as a standing issue, United argues that even if it could obtain copies of each and every assignment and release involving a proposed class member,[2] it would be impossible without individualized inquiry to determine which proposed class members possess the right to benefits and thus actually

---

[1] The proposed class includes "[a]ll persons and businesses domiciled in the United States who, between May 31, 2008 and the present, are or have been an insured, covered person, beneficiaries and/or have been assigned rights  and/or  benefits in whole or in part under a GSP2 . . . Policy . . . and were paid benefits for a hospital  stay under the [HEB] provision . . . . "  ECF No. 50, at 6.

[2] United states that it does not maintain records of assignments between insureds and healthcare providers; nor is it privy to ratification and release agreements between insureds and assignees.

qualify as real parties in interest.

Kennedy argues that the assertion that some class members may lack standing or real-party-in-interest status is mere speculation, which should be ignored.  The Court disagrees.  Kennedy assigned her right to benefits by signing a standard hospital admission agreement, and it is likely that other putative class members entered similar agreements.  Furthermore, Kennedy's definition of the putative class includes individuals and entities that have been assigned rights and benefits "in whole or in part" under a GSP2 Policy.  The rule requiring that the party who brings an action actually possess, under the substantive law, the right sought to be enforced protects a defendant against a subsequent action by the party actually entitled to recover, and it ensures that the judgment will have its proper effect as res judicata.  *See United HealthCare Corp. v. American Trade Ins. Co., Ltd.* 88 F.3d 563, 569 (8th Cir. 1996)(citing Fed. R. Civ. P. 17(a), advisory committee note).  Kennedy cannot bypass or ignore the important task of identifying putative class members that qualify as real parties in interest.

Under the circumstances, it is difficult to envision a method for identifying proper class members without conducting extensive, individualized inquiries.  In determining whether Kennedy qualified as the real party in interest in this case it was necessary to resolve multiple questions--including which state's law governed

the issue, whether the language of the assignment contract between Kennedy and NEA evidenced an intention to effect a transfer, and whether the contract language and circumstances evidenced only a partial transfer and an intent that Kennedy retain the right to sue.  As demonstrated by the protracted proceedings regarding Kennedy's status, assignments of GSP2 benefits present a myriad of issues that require consideration of individual proof.

 Kennedy suggests that because the class is limited to individuals that "were paid benefits for a hospital stay," individual inquiries are not necessary.  She states:  "All assignments would have been executed before [United] made any benefit payments.  Therefore, [United] has this information and Plaintiff's claim is typical." ECF No. 58, at 21.  Kennedy provides nothing to support her assumption that assignments always occur before United pays benefits, and the history of Kennedy's individual claim undermines her argument that the class definition ensures that putative class members qualify as real parties in interest.

 Furthermore, the law governing assignments simply does not support Kennedy's contention that limiting the class to benefit payees ensures that class members qualify as real parties in interest.  An assignment may be partial or conditional, and the assignor may retain an interest in the chose sufficient to qualify as the real party in interest.  For example, an assignment for collection only

transfers legal title to an assignee, who serves as an agent for collection. *See Dickinson v. Burr*, 15 Ark. 372, 1854 WL 612 (1854). The assignee may bring suit to collect money from the debtor, but he must turn over the proceeds to the assignor, and the assignor, who retains a beneficial interest in the assigned chose, may revoke the assignment for collection at any time and sue in his own name. *See Dickinson v. Burr*, 15 Ark. 372, 1854 WL 612 (1854).

Even if assignments were not a factor, the Court finds that the class claims are not sufficiently cohesive to warrant adjudication by representation. First, assuming a nation-wide class, choice-of-law determinations and resolution of the applicable legal standards under various state laws will require individual inquiries.[3] Second, even if class members were limited to individuals and entities domiciled in Arkansas, and further assuming that Arkansas law would govern all class claims, Kennedy fails to demonstrate that common evidence will generate common answers apt to drive the resolution of the litigation.

Kennedy contends that this case presents a single legal issue that is "perfect"

---

[3]When federal jurisdiction is based on diversity of citizenship, the court looks to the choice-of-law principles of the forum state–in this case Arkansas--and applies those principles as the forum state would. *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994). In contract actions, when the agreement does not specify the law to be applied, Arkansas Courts have applied the "significant contacts" test, which requires an inquiry into the nature and quantity of each state's contacts with the transaction at issue. *Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704, 706 (8th Cir. 2002); *Southern Farm Bureau Casualty Ins. Co. V. Craven*, 79 Ark. App. 423, 89 S.W.3d 369 (2002).

for class certification: "Whether, under the GSP2 policy, the day of discharge should be considered in calculating the number of Hospital Days." ECF No. 68, at 16. Presuming that the day of discharge will be counted toward the number of days of hospital confinement, Kennedy asserts that the remedy in this is straightforward: every class member will be entitled to benefits for an additional day of hospitalization.

United maintains that the recalculation of benefits will necessitate separate assessments for each plaintiff. For example, the GSP2 Policy provides that the benefit limitation under Part 1 are calculated according expenses incurred for the same injury or illness. Therefore, if a hospital stay involved treatment for multiple injuries or illnesses, it would take a manual review to determine which expenses pertain to each injury or illness and whether those expenses exceeded any limitation under GSP2, Part 1. *See* ECF No. 56, at 22 n.11 (citing Hendee Dep. at 35). Kennedy has no plan for addressing instances where a hospital stay involves multiple injuries or illnesses, and the Court finds that she has failed to show that damages can be proven on a systematic, class-wide basis.

Kennedy asserts that the Court "may determine that a predominate issue of law and fact is whether the GSP2 HEB policy provision is ambiguous" and that this issue alone supports certification. However, "'[w]hat matters to class

certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Wal-Mart Stores, Inc. v. Dukes* 131 S.Ct. 2541, 2551 (2011)(quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Here, the broad class definition and dissimilarities within the proposed class make the class claims particularly ill-suited for class action treatment. It is undisputed that the putative class includes hospitals that have received assignments for GSP2 hospital benefits. United presents evidence that for billing purposes, hospitals follow an industry-wide standard for computing the days of inpatient confinement in a hospital. *See* ECF No. 55-12 (Arges Aff., ¶ 1). George Arges, the Senior Director of the Health Data Management Group for the American Hospital Association Arges, who also serves as Chair of the National Uniform Billing Committee, testifies that hospitals use a standard billing form, known as UB04, which is commonly submitted to insurance companies in connection with patient benefit claims. According to Arges, "hospitals understand" that information contained on a UB04 form will be used by insurance companies to

process claims. *Id.* (Arges Aff., ¶ 4). Arges further testifies that hospitals employ an industry-wide standard for computing the days of inpatient confinement in a hospital. *Id.* (Arges Aff., ¶ 2). He states: "With one exception, the day of admission is counted, but the day of discharge is not. The exception occurs when the day of admission and discharge occur within the same twenty-four hour period, in which case the number of hospital days is considered to be one." *Id.* According to Arges, the method for computing the days of hospital confinement has its origins in Medicare requirements, and it is employed by all hospitals regardless of the payor insurance company. *Id.* (Arges Aff., ¶ 3).

United also presents the testimony of the company's vice president, Peter Hendee. Hendee testifies that he personally drafted the GSP2, Part 1 hospital benefits provision, which he states "is based on the number of days of hospitalization." ECF No. 58-5 (Hendee Dep. at 2-3). Hendee reports that United determines the number of hospital days or "days of confinement" for a particular claim based on billing information submitted by hospitals and healthcare providers. ECF No. 55-10 (Hendee Dep. at 21). In Kennedy's case, United received a UB04 claim statement from NEA, which indicated that Kennedy incurred hospital expenses for two days' room and board. *See* ECF No. 55-6.

Given evidence that hospitals uniformly exclude the day of discharge on

claim forms submitted to insurance companies, with knowledge that insurance companies rely on that information in processing claims, hospital class members are uniquely susceptible to affirmative defenses asserted in United's answer, including estoppel and waiver, which would require consideration of individual proof.[4]

Because the Court finds that Kennedy has failed to show that common questions of law and fact predominate over individual issues, class certification must be denied.

**Rule 23(a) Requirements**

The commonality, typicality, and adequacy of representation requirements[5] effectively "limit the class claims to those fairly encompassed by the named

---

[4] Waiver "may occur when one, with full knowledge of material facts, does something inconsistent with the right or his intention to rely upon it." *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 614, 864 S.W.2d 817, 830 (1993). Under Arkansas law, an estoppel defense requires proof that (1) the plaintiff knew the facts on which the estoppel is based, (2) the plaintiff reasonably should have expected that the defendant would act upon his conduct, (3) the defendant was unaware of the facts on which the estoppel is based, and (4) the defendant relief in good faith upon the plaintiff's conduct. *See Bedford v. Fox*, 333 Ark. 509, 514, 970 S.W.2d 251, 254 (1998).

[5] As explained by the Supreme Court in *General Tel. Co. v. Falcon*, 102 S. Ct. 2364 (1982), the commonality, typicality, and adequacy of representation requirements tend to merge. The commonality and typicality requirements "[b]oth serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of class members will be fairly and adequately protected in their absence. [The commonality and typicality] requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement raises [additional] concerns about the competency of class counsel and conflicts of interest." *Id*. at 2370 n.13.

plaintiff's claims." *General Tel. Co. v. Falcon*, 102 S. Ct. 2364, 2370 (1982) "A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id*. (quoting *East Texas Motor Freight System, Inc. V. Rodriguez*, 97 S. Ct. 1891, 1896 (1977). )

In this case, the undisputed evidence disqualifies Kennedy as a member of the class. Kennedy contends that a key requirement of class membership is that the plaintiff "[was] paid benefits for a hospital stay under the Hospital Expense Benefit provision of that GSP2 policy." Docket entry #50, at 6. According to Kennedy, limiting class membership to benefit payees serves several important purposes: ensuring that all class members have standing, excluding members who are not entitled to benefits, and facilitating identification of class members via United's payment records. It is undisputed that Kennedy transferred her right to receive benefit payments to NEA, and she was never paid benefits under a GSP2 Policy.

Even if Kennedy were a benefit payee, the Court finds that she does not qualify as an adequate representative, which is perhaps the most important of all prerequisites to certification of a class action. *See Bishop v. Committee on Professional Ethics and Conduct*, 686 F.2d 1278, 1288 (8th Cir. 1982). Kennedy's entire claim rests on the supposition that the GPS2 Policy requires that United

count the day of discharge as a day of confinement during a hospital stay. United notes that Kennedy's proposed interpretation conflicts with the standardized billing practices of hospital class members that she seeks to represent. United also points out that the putative class includes current GSP2 policyholders who have a financial incentive to consider how this litigation will affect the cost of a GSP2 Policy. Kennedy, who is not a policyholder and remains indebted for the hospital charges that underlie her claim for benefits, has no similar interest.

## III.

For the reasons stated, Plaintiff's motion for class certification (docket entry #49) is DENIED, and Plaintiff's related motion to amend the complaint (docket entry #48 )[6] is DENIED.

IT IS SO ORDERED THIS 3RD DAY OF APRIL, 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[6]Kennedy seeks to amend the complaint to conform to the proposed class definition. The Court considered the proposed, amended class definition in deciding Kennedy's motion for class certification.